**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**MIRIAM R.,**

**Plaintiff,**

      **v.**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

**Defendant**.

**Case No. 1:21-cv-01242-TPK**

**OPINION AND ORDER**

## OPINION AND ORDER

Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on September 24, 2021, denied Plaintiff's application for disability insurance benefits.  Plaintiff has now moved for judgment on the pleadings (Doc. 7) and the Commissioner has filed a similar motion (Doc. 8).  For the following reasons, the Court will **DENY** Plaintiff's motion, **GRANT** the Commissioner's motion, and direct the Clerk to enter judgment in favor of the Commissioner.

## I.  BACKGROUND

Plaintiff filed her application for benefits on July 17, 2018, alleging that she became disabled on February 28, 2018.  After initial administrative denials of that claim, multiple hearings were held before an Administrative Law Judge between January 21, 2020 and May 5, 2021.  Plaintiff, a vocational expert, and a medical expert, all testified at the last hearing.

The Administrative Law Judge issued an unfavorable decision on May 12, 2021.  He first found that Plaintiff met the insured status requirements of the Social Security Act through June 20, 2022, and that she had not engaged in substantial gainful activity since her alleged onset date.  Next, the ALJ concluded that Plaintiff suffered from severe impairments including major depressive disorder, anxiety disorder, and obesity.  However, the ALJ determined that these impairments, taken singly or in combination, did not meet the criteria for disability under the Listing of Impairments.

Moving forward with the sequential evaluation process, the ALJ then concluded that Plaintiff had the ability to perform a full range of work at all exertional levels.  However, she was able to understand and remember only simple instructions and perform simple, repetitive, and routine tasks which involved no more than frequent contact with supervisors, coworkers, and the general public.  She was also unable to work at a job with production quotas, could adjust to routine changes in the work environment, and would be off task for 8% of the workday due to

issues with fatigue and insomnia.

Next, relying on the vocational expert's testimony, the ALJ determined that, with these limitations, Plaintiff could still perform her past relevant work as a cashier and recreation aide, both light, unskilled occupations. As a result, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff, in her motion for judgment on the pleadings, raises these claims of error: (1) that the ALJ had no basis for his findings that the two jobs which, he concluded, Plaintiff could still do met the definition of "past relevant work"; (2) that the ALJ had no basis for finding that Plaintiff would be off-task for 8% of the workday; and (3) that the ALJ erred by failing to make specific findings about how stress limited her ability to work.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

The Court begins its review of the evidence by summarizing the testimony given at the administrative hearings.

Plaintiff was unrepresented at the first hearing, and testified only about the medical providers she was seeing or had seen. At the second hearing, which was scheduled to be held by telephone, Plaintiff requested an in-person hearing. At the third hearing, Plaintiff, who was 57 years old at the time, testified that she lived alone in an apartment and had just started a part-time job as an activities aide. She was able to drive and drove seven days a week. Plaintiff also said that she had obtained a bachelor's degree but had no additional vocational training. Before her current job, Plaintiff had done similar part-time work at a different facility. Her last full-time job was as an administrative assistant, and before that she had been a cashier.

Next, Plaintiff said that she began seeing Dr. Weinstein in 2014 and stopped seeing her in 2019. At the time of the hearing, she was seeing a different doctor for medication management and also was seeing a therapist. Because some of her medical records had not been obtained, a fourth hearing was scheduled. At that hearing, Plaintiff confirmed that she had been working every other weekend. She was also asked what conditions kept her from working full-time, and responded that she had been suffering from major depressive disorder and generalized anxiety disorder. She had difficulty sleeping and needed to nap during the daytime. Plaintiff also testified that she was easily overwhelmed and upset and it was challenging for to leave home. She did not socialize but had no problems interacting with others. Her fatigue made it hard for her to accomplish daily chores and she was concerned that if she had a full-time job she would be unable to get up and go to work every day.

A medical expert, Dr. Cohen, was the next witness. He testified that the records showed that Plaintiff had major depressive disorder (in his view, caused by anger toward her family which she had internalized), and that she was unhappy and suffered from problems with sleep,

fatigue, concentration, and increased appetite.  She also had not responded well to treatment for depression, but had done better with her anxiety disorder.  Dr. Cohen concluded that she had a mild impairment in her memory, social functioning, and concentration, and a moderate impairment in dealing with stress.  In Dr. Cohen's opinion, Plaintiff could do simple tasks but could not do production work, and she would not miss work due to her impairments.

Finally, the vocational expert, Ms. Pruitt, testified that Plaintiff's past jobs included cashier, home attendant, recreation aide, model, and development specialist.  Ms. Pruitt was then asked to assume that Plaintiff could work at all exertional levels but could do only simple work with some restrictions on her ability to relate to others and with the need to be off task for 8% of the workday.  In response, Ms. Pruitt said that Plaintiff could still do the cashier and recreation aide jobs.  She also testified that being off task more than 10% of the time or missing more than one day of work per month (including being tardy) would not be tolerated in those jobs.

## B.  Medical Evidence

Pertinent medical records show the following.  It appears that Plaintiff was diagnosed with depression as early as 2013.  Dr. Weinstein, who was for a time Plaintiff's treating psychologist, saw Plaintiff in February of 2017, and reported that Plaintiff was feeling anxious and overwhelmed.  However, her affect was bright and she was within normal limits from a cognitive standpoint.  Dr. Weinstein's assessment was major depressive disorder, recurrent, and generalized anxiety disorder, and Plaintiff was prescribed various medications to treat those disorders.  Subsequent notes show that her condition was much the same throughout 2017 and 2018, although a December, 2017 record reports that Plaintiff's "depression and anxiety continue to confound her, making it difficult to find a job, focus, concentrate and really just be present in the moment," (Tr. 572), and a 2018 note said that she continued to be depressed and dysphoric and still had problems concentrating.  Nevertheless, by May, 2018, she had found part-time work and said she was really enjoying the job, working Mondays and Fridays and occasionally picking up other shifts.

An October, 2018 treatment note from Dr. Weinstein reported that Plaintiff's hours had been cut, and her affect and speech were restricted.  2019 notes show that, at times, Plaintiff's mood was improved, and at other times she was depressed and overwhelmed.  Also during 2019, Plaintiff underwent electroconvulsive therapy, discontinuing that treatment in October of that year after experiencing some improvement in her symptoms. She was also discharged from counseling at Jewish Family Services that year because that agency concluded she needed more intensive therapy.  She had an assessment done at Niagara Falls Memorial Medical Center where she reported continued moderate depression and anxiety as well as social withdrawal.  Her concentration was poor but her memory was intact.  She requested continued treatment at that facility.

The record also contains a large number of counseling notes from both Jewish Family Services and from Plaintiff's most recent counselor, Maggen Daunce.  The notes are consistent

with the treatment records from Dr. Weinstein, showing that Plaintiff reported ongoing depression and anxiety as well as difficulties sleeping, but that she was also attempting to find work while at the same time being apprehensive about her ability to maintain employment.

## C.  Opinion Evidence

Plaintiff underwent a psychiatric evaluation on October 15, 2018.  The consultative examiner, Dr. Santarpia, indicated that Plaintiff reported a history of depression and anxiety. She was being treated through medication management and counseling.  Plaintiff said she had difficulty sleeping and had always experienced dypshoric mood, crying spells, hopelessness, and feeling overwhelmed.  She also reported difficulty concentrating and fatigue.  Her mood at the examination was euthymic and her attention and concentration were intact, as were her recent and remote memory skills.  Dr. Santarpia concluded that Plaintiff could deal with both simple and complex instructions, interact appropriately with others, sustain concentration, and attend work on a regular basis.  (Tr. 624-28).  A physical evaluation done the same day did not reveal any functional limitations.  (Tr. 629-33).

Plaintiff's counselor, Ms. Daunce, completed a mental health form on April 23, 2020. She indicated she had been seeing Plaintiff since October of the prior year and that Plaintiff had been diagnosed with major depression and generalized anxiety.  Her symptoms included decreased energy, difficulty thinking and concentrating, mood disturbance, emotional withdrawal, and easy distractibility.  Ms. Daunce thought that Plaintiff's primary difficulties were in the areas of being able to complete a workday or work week without interruption from psychologically-based symptoms, performing at a consistent pace, and responding to changes in the work setting - she rated Plaintiff as being unable to meet competitive standards in these areas - and said that Plaintiff had a number of other serious limitations as well.  She did not think that Plaintiff could maintain even part-time work.  (Tr. 739-44).

## III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

 "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112

(quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV.  DISCUSSION

### A.  Past Relevant Work

As her first claim of error, Plaintiff asserts that substantial evidence does not support the ALJ's finding that the jobs of recreation aide and cashier were past relevant work.  She notes that among other requirements, past relevant work must have consisted of substantial gainful activity. Plaintiff asserts that the recreation aide job was not such activity based on her earnings record from 2017-2020, and that earlier in his decision the ALJ actually found that her part-time work was not substantial gainful activity.  She also argues that the record does not contain enough evidence to equate the work Plaintiff did at a taco restaurant with the cashier position which the ALJ found to be past relevant work.  Lastly, she claims that the vocational expert did not adequately explain discrepancies between the vocational evidence and the Dictionary of Occupational Titles.  The Commissioner, in response, concedes that Plaintiff's part-time job of recreational aide should not have been considered to be past relevant work.  However, the Commissioner contends that there is ample evidence in the record to support the conclusion that Plaintiff did have past relevant work as a cashier.

The record on this issue shows the following.  As the Commissioner points out, in a written disability report (*see* Tr. 428), Plaintiff said that she worked as a restaurant cashier from 2003 to 2009, earning $8.75 per hour.  Her earnings record shows that she earned significant wages from a company named "Mighty Taco" from at least 2004 to 2007 and some wages from that employer in 2008 and 2009.  At the third administrative hearing, Plaintiff described that job as involving a little lifting - pans and containers of food - but said that "most of it was cashiering and customer service."  (Tr. 71).  The vocational expert testified that she had "read the file" concerning Plaintiff's work history, and she then identified one of the past jobs as "cashier II." She also stated that her testimony was, with the exception of certain aspects of employment not relevant to this claim, in accordance with the DOT.  (Tr. 55).  Plaintiff's counsel asked no questions about any of her testimony on this subject.

In her reply memorandum, Plaintiff again argues that the ALJ erred in finding that Plaintiff's past job was accurately described as cashier II, contending both that the testimony that Plaintiff did a little bit of lifting made it a "composite job" and that the vocational expert did not adequately reconcile her testimony with the DOT. The Court finds these contentions to lack merit.

Here, the ALJ was entitled to rely on the testimony of the vocational expert that Plaintiff's job at Mighty Taco fit within the category of cashier II. Although, as Plaintiff testified, she might also have had to do some minimal lifting in that job, that does not make it a "composite job." Where there is no vocational testimony to that effect, the fact that a claimant may have performed a job in a somewhat different manner than it is usually performed does not make that job "composite." Rather, it illustrates the fact that a claimant may be deemed able to do past relevant work either as she actually performed it or as it is normally performed in the national economy. *See, e.g., Noelle v. Comm'r of Social Security*, 2017 WL 9509957 (N.D.N.Y. Feb. 13, 2017), *adopted and affirmed* 2017 WL 945094 (N.D.N.Y. March 10, 2017). The conclusion that Plaintiff worked as a cashier is amply supported by her testimony that the job she did was "mostly cashiering and customer service." Similarly, there is no apparent conflict with the DOT and, again, the ALJ was permitted to rely on the vocational expert's testimony that what she said about Plaintiff's past work was consistent with that publication. Although the Court of Appeals has said, in cases like *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87 (2d Cir. 2019), that an ALJ has an affirmative duty to pursue questioning about consistency with the DOT when the record contains an apparent conflict between that source and the expert testimony, there is no such apparent conflict here. Further, any lifting the Plaintiff may have been required to do was well within her exertional capacity as found by the ALJ, and she does not argue otherwise. For all of there reasons, this first claim of error provides no basis for remand.

### B. Residual Functional Capacity Finding

Plaintiff next argues that the ALJ erred when he determined, as part of the residual functional capacity finding, that she would be off task for exactly 8% of the workday. She points out that this type of finding must be supported by the record and not the product of surmise or guesswork by the ALJ, and notes that there are no medical opinions of other evidence addressing the question of how much time she would need to spend off task during a normal workday. Plaintiff further argues that any error in this regard is not harmless because of the vocational expert's testimony that being off task more than 10% of the time would not be tolerated in Plaintiff's past relevant job. The Commissioner responds that in a case where a more extensive amount of time off task is not suggested by the evidence, any error made by the ALJ is harmless.

The Commissioner has the better of this argument as well. The Court agrees with Plaintiff that there does not appear to be any evidentiary support for the ALJ's conclusion that

the residual functional capacity finding should include an 8% off task limitation, but the fact that no medical professional expressed the opinion that Plaintiff would need to be off task for any amount of time in addition to regular work breaks undercuts Plaintiff's claim that the ALJ's error impacted the outcome of the case.  Any error made actually favored Plaintiff, giving her the benefit of a work restriction which the evidence did not support. There is no reasonable probability that, were the Court to demand the case to correct this error, the ALJ would make a finding concerning the time off task that would alter the outcome and result in a more favorable decision.  Under these circumstances, the harmless error rule applies and precludes the grant of relief on this claim.  *See,e.g., Sandee K. v. Comm'r of Social Security*, 2023 WL 2623591, *14 (W.D.N.Y. Mar. 24, 2023) (harmless error is one which is not reasonably likely to change the outcome at the agency level).

### C.  Stress

Plaintiff's third and final claim is that the ALJ's decision did not properly account for the limitations which Plaintiff's impairments caused on her ability to deal with work stress. However, the record does not support that claim. As noted, the ALJ, relying primarily on Dr. Cohen's testimony (a decision which Plaintiff does not challenge), limited Plaintiff to the performance of simple, routine, repetitive tasks not performed at production pace. This type of work-related limitation has been recognized by the courts as a reasonable accommodation to limitations on a claimant's ability to deal work stress. *See, e.g., Williams v. Comm'r of Soc. Sec.*, 2018 WL 4443173, at *8 (W.D.N.Y. Sept. 18, 2018) (such limitations "are not inconsistent with the conclusion that [the claimant] retained the ability to engage in simple, routine work.") Consequently, the Court finds no merit in this last claim of error, and therefore resolves the case in the Commissioner ' s favor.

### V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 7), **GRANTS** the Commissioner's motion (Doc. 8), and **DIRECTS** the Clerk to enter judgment in favor of the Commissioner.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**